UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BENISTAR ADMIN SERVICES, INC., | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-1320 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | DECEMBER 10, 2010 |
| Defendant. | : | |

**RULING RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(Doc. No. 30)**

**I. INTRODUCTION**

Plaintiff, Benistar Admin Services, Inc. ("BASI"), brings this action against defendant, the United States ("the Government"), because of the filing of a notice of a federal tax lien ("the notice") by the Internal Revenue Service ("the IRS") against BASI. BASI seeks, inter alia, quiet title pursuant to 28 U.S.C. § 2410 to enjoin the Government from maintaining the notice, due to an alleged violation of BASI's Fifth Amendment due process rights.

BASI initially filed a Motion for a Temporary Restraining Order and a Motion for a Preliminary Injunction (Doc. No. 5). This court denied both Motions. See Doc. Nos. 14, 26. Specifically, the court denied BASI's Motion for Preliminary Injunction because BASI failed to establish that it faced irreparable harm. BASI subsequently filed the pending Motion for Partial Summary Judgment as to its quiet title claim (Count Two of the Second Amended Complaint (Doc. No. 35)). For the following reasons, the court denies this Motion.

1

## II. FACTUAL BACKGROUND[1]

On August 10, 2009, the Government notified BASI that it had assessed penalties against the company for violating section 6708 of the Internal Revenue Code by failing to provide a list that identified each person for whom BASI acted as a "material advisor." L.R. 56(a)(1) Stmt. ¶ 1. The assessment was based on a request, made by letter on January 20, 2006, for a list of individuals for whom BASI acted as a material advisor in the year 2002. Id. BASI did not pay the assessment, but on July 8, 2010, BASI filed a protest of the assessment to an IRS Appeals Officer. Id. at ¶ 2.

On August 2, 2010, the IRS sent a notice of intent to levy on the 2009 assessment. Id. at ¶ 3. On August 12, the IRS notified BASI that it had filed a Notice of Federal Tax Lien with the Town Clerk of Simsbury, Connecticut, in an amount of $1,120,000. Id. at ¶ 5. BASI has requested collection due process hearings with respect to the Government's lien and intent to levy. Id. at ¶¶ 4, 7.

## III. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party

---

[1] For the purposes of this section, undisputed facts will be cited to BASI's Local Rule 56(a)(1) Statement (Doc. No. 30-2).

against whom summary judgment is sought. See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV.   DISCUSSION

BASI's claim is rather simple: the IRS, it argues, violated BASI's Fifth Amendment right to due process by failing to provide a hearing before it filed a notice of lien pursuant to 26 U.S.C. § 6320. The resolution of this claim, however, is not so simple. Rather, this court must engage in a "fact-intensive inquiry" into the interests at stake and the process provided to BASI. Diaz v. Paterson, 547 F.3d 88, 97 (2d Cir. 2008).

BASI is correct that, in some respects, this is a case of first impression. This

3

court has found no opinion addressing the legality of the specific Internal Revenue Code notice of lien provision in question.  However, the principles underlying this claim are quite old.  The federal government has withstood a number of challenges to its collection processes dating back over one hundred years.  See, e.g., United States v. Nat'l Bank of Commerce, 472 U.S. 713 (1985); Phillips v. Commissioner, 283 U.S. 589 (1931).  BASI nonetheless asks the court to find—in a series of (relatively) new Supreme Court opinions—a shift in the understanding of the process that is due a business in BASI's position.  For the reasons stated below, the court declines this request.[2]

In order to analyze BASI's claim, the court applies the test articulated by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976).  A court must examine "(1) the private interest involved, (2) the risk of an erroneous deprivation of that interest through the procedures utilized, as well as the probable value of additional procedural safeguards, and (3) the government's interest, including the burden that additional procedural requirements would impose."  British Int'l Ins. Co. v. Seguros La Republica, S.A., 212 F.3d 138, 142 (2d Cir. 2000) (citing Mathews, 424 U.S. at 325).  Following the examples of the Second Circuit and the Supreme Court, the court examines each of the Mathews factors individually, comparing the facts in this case to facts discussed in similar cases.  The court then determines the weight it should afford to the interests and

---

[2] BASI challenges the provision in question both facially and as applied.  As discussed in more detail below, the court holds that BASI failed to demonstrate that 26 U.S.C. § 6320 is unconstitutional as applied to the company.  Therefore, BASI necessarily fails a facial challenge.  See Diaz, 547 F.3d at 101 (holding that, in order succeed on a facial challenge, plaintiff must "'establish that no set of circumstances exists under which the [statute] would be valid'" (quoting Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.2d 105, 110 (2d Cir. 2003) (alteration in original)).

processes of this case relative to the weight discussed in the relevant case law. The court then balances these factors, one against the other, to determine whether BASI received the process it was due under the Fifth Amendment.

For more than thirty years, courts have engaged in such careful and belabored examinations of the procedural protections provided by the Government to determine whether, in a particular context, due process is lacking. BASI's Memoranda suggest that, absent exigence, the Doehr decision requires the utilization of a particular process by the Government—a pre-notice hearing. The idea of a per se right to a pre-deprivation hearing, however, is inconsistent with the balancing test laid out in Mathews. While such a hearing is certainly protective of a property owner's interest, it has never been specifically required in all cases. See Gilbert v. Homar, 520 U.S. 924, 930-31 (1997). Rather, the court must carefully examine the case before it and "remain mindful that '[d]ue process is inevitably a fact-intensive inquiry.'" Diaz, 547 F.3d at 97 (quoting Krimstock v. Kelly, 306 F.3d 40, 51 (2d Cir. 2002)).

     A.     Mathews Step One—The Private Interest

BASI certainly has a property interest at stake. The Supreme Court in Connecticut v. Doehr made clear that an attachment or a lien constitutes a deprivation of property, even if it is only temporary. 501 U.S. 1, 11 (1991). Such an attachment "clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; [etc.]" Id. Additionally, as it applies to BASI, the lien in question is large, totaling over one million dollars. See Ex. E to Robinson Decl. (Doc. No. 5-2); see also Robinson Decl. ¶ 13 (Doc. No. 5-2) (alleging that the lien exceeds BASI's net worth). However, this interest is less severe than if the IRS had seized the funds outright. See

5

Doehr, 501 U.S. at 12 ("[T]hese effects do not amount to a complete, physical, or permanent deprivation of real property . . . ."); cf. Diaz, 547 F.3d at 98 ("[L]is pendens is deemed one of the 'less restrictive' means of protecting a disputed property interest." (quoting United States v. James Daniel Good Real Prop., 510 U.S. 43, 62 (1993)).

BASI's interest in protecting its business against a lien is also not as strong as interests discussed in a number of similar cases, including that in Doehr where the plaintiff's home was attached. See Doehr, 501 U.S. at 5. The interest in a home "merits special constitutional protection." United States v. All Assets of Statewide Auto Parts, Inc., 971 F.2d 896, 902 (2d Cir. 1992); see also Good, 510 U.S. at 53-54 ("Good's right to maintain control over his home and to be free from governmental interference, is a private interest of historic and continuing importance. . . . The seizure of a home produces a far greater deprivation than . . . attachment."). In fact, a number of the key Supreme Court cases in which the Supreme Court found process inadequate involved a home or household goods. See, e.g., Good, 510 U.S. at 47 (seizure of a home); Fuentes v. Shevin, 407 U.S. 67, 70 (1972) (seizure of household goods).

BASI also contends there is serious risk that, if the lien were to remain in effect for too long, the company would no longer be able to stay in business. See Mem. in Support of Pl.'s Mot. for Temporary Restraining Order 7-8 (Doc. No. 5-1). However, the court has previously held that BASI failed to establish at a preliminary stage that it faced irreparable harm. See Doc. No. 26. BASI has not supplied any additional evidence on this issue since filing its Motion for Preliminary Injunction. Therefore, BASI's interest in its business cannot be said to be as strong an interest as that in cases where the plaintiff is at risk of irreparable injury pending a formal proceeding.

See, e.g., Goldberg v. Kelly, 397 U.S. 254, 264 (1970) (finding that the pre-hearing removal of welfare benefits "may deprive an eligible recipient of the very means by which to live while he waits").

On balance, BASI's interest is neither especially strong nor de minimis. Procedural safeguards must be in place to prevent the wrongful deprivation of BASI's interest in a lien-free company. However, the interest cannot be said to be as strong as it might have been if the Government had chosen to seize BASI's funds outright, if the lien had been placed on a home, or if BASI faced irreparable harm.

  B.  Mathews Step Two—Risk of Error / Value of Additional Safeguards

The second step of the Mathews test calls for an examination of the risk of erroneous deprivation, as well as a consideration of the probable value of additional procedural safeguards. For the reasons discussed below, the court finds that, while the procedure available to a taxpayer to contest a lien is neither especially prompt, nor is it particularly wanting. A pre-deprivation hearing would almost certainly contribute to a reduction in error. However, the availability of an immediate injunction under Enochs coupled with the fact that tax disputes are not generally fact intensive, suggests that the risk of error of a post-deprivation hearing is not as strong as it might be in other cases.

  1.  Risk of Error

All government actions that deprive an entity of an interest in property carry with them a risk of error. However, a number of factors present in this case help to alleviate this risk, including (1) the availability of a Enochs injunction, (2) the availability of a relatively prompt opportunity for a hearing, and (3) the nature of the assessment.

### a) Enochs v. Williams Packing & Navigation Co.

The Anti-Injunction Act generally prevents the challenging of the merits of a tax assessment in District Court. See 26 U.S.C. § 7421(a). Rather, a taxpayer company must pursue its remedies through the IRS's administrative process prior to seeking federal court review. See Laino v. United States, 633 F.2d 626, 629 (2d Cir. 1980). A judicial exception to this rule was crafted by the Supreme Court in Enochs v. Williams Packing & Navigation Co., 370 U.S. 1 (1962). In that case, the Supreme Court found that a court could enjoin an IRS collection action if two conditions were met: (1) the Government could not win on the merits, and (2) the claimant faced irreparable harm. Commissioner v. Shapiro, 424 U.S. 614, 627 (1976) (citing Enochs, 370 U.S. at 7).

While Enochs provides only a post-deprivation remedy, it does permit prompt review in the most egregious of cases. As an example, relying on its Enochs cause of action, plaintiff in the present case filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction in the District Court on August 19, 2010. Doc. No. 5. Five days later, a telephone conference was held with both parties present, where the court denied the TRO. Doc. No. 14. The court offered an opportunity for a prompt hearing, but at the request of the parties (in order to accommodate briefing), the court conducted its hearing with respect to the Preliminary Injunction Motion one month after the telephone conference. See Doc. No. 26.

Although access to the federal courts through Enochs is limited to cases in which both irreparable harm and clear error are present, the court finds that the availability of the Enochs action is highly relevant to the instant due process analysis. Were there no opportunity for courts to prevent irreparable harm upon meritless action by the IRS, the

8

Tax Code provisions might well be constitutionally suspect. However, the existence of the Enochs action reduces the risk of an erroneous deprivation of BASI's property interest. Cf. Shapiro, 424 U.S. at 633 (finding the Enochs action to be consistent with due process).

### b) Prompt Opportunity for Review

Assuming a taxpayer company cannot satisfy the requirements of Enochs v. Williams Packing & Navigation Co., it has to pursue the post-deprivation remedies supplied by the IRS. Specifically, after a notice of lien has been filed, the IRS is required to immediately notify the taxpayer of the lien, as well as the right to appeal the lien and the underlying assessment (assuming the taxpayer has not already had the opportunity to do so). See 26 U.S.C. § 6320.

BASI has failed to establish that the IRS process is especially slow. According to BASI, it has been five months since it requested a hearing on the notice of the lien and it has yet to receive one. While such a delay suggests that the IRS hearing may not be as prompt as was available in cases such as Connecticut v. Doehr, where the deprived party was entitled to an "expeditious" hearing, 501 U.S. at 14-15, there is no reason to believe that the delay will be as extreme as it was in Reardon v. United States, 947 F.2d 1509 (1st Cir. 1991). In Reardon, the plaintiffs could have been forced to wait up to six years before receiving a post-deprivation hearing. Id. at 1519. The First Circuit found that this scheme "thr[ew] the 'ultimate judicial determination' so far into the future as to render it inadequate." Id. at 1520.

The court acknowledges that five months is not an insubstantial amount of time. However, the court does not find a delay of months to be inordinately long. Such a

delay does not weigh strongly for or against the finding of a violation of due process. Cf. Gilbert v. Homar, 520 U.S. 924, 930-31 (1997) (discussing a variety of cases in which the Supreme Court has found a post-deprivation hearing sufficient).

        c)      Nature of Assessment

A final aspect of the notice in question that should be considered is the nature of the assessment itself. Certain "'uncomplicated matters that lend themselves to documentary proof'" have been found by courts to be less prone to error and therefore more conducive to summary proceedings. Doehr, 501 U.S. at 14 (quoting Mitchell v. W.T. Grant Co., 416 U.S. 600, 609 (1974)). The most clear example is the that of the vendor's lien, upheld in Mitchell v. W.T. Grant Co., where the terms of the contract and evidence of default were easily demonstrated and verifiable. 416 U.S. at 609; see also Diaz, 547 F.3d at 98 (upholding pre-hearing lis pendens procedure in light of the fact that creditors possessed "pre-existing, readily quantifiable" interests).

At the other extreme are cases like Connecticut v. Doehr, where the attachment rested on an affidavit submitted by a tortfeasor summarily declaring that his assault claim was likely to succeed. 501 U.S. at 5. Such claims are fact-intensive and not generally susceptible to documentary analysis. Id. at 14. The court in Reardon v. United States similarly found that issues underlying a lien imposed by the Environmental Protection Agency ("the EPA") resulting from environmental damage and involving questions of "due care, foreseeability, [and] objective and subjective knowledge," were "extremely fact-intensive" and did not lend themselves to documentary proof. 947 F.2d at 1519.

The instant case falls somewhere between these two poles. As compared to

those of other federal agencies, claims by the IRS tend to be much more susceptible to documentary proof. An IRS agent is tasked with gathering documents directly from the taxpayer and then comparing these with the requirements of the Tax Code. While complicated disputes of interpretation certainly can arise, such as those raised in BASI's case, the record will not generally contain disputed facts. In the present case, it appears to the court that the issues will primarily be of a legal nature, addressing a framework of facts largely undisputed.

        2.        Additional Safeguards

Another question raised by the second part of the Mathews analysis is what the probable value of additional procedural safeguards might be. In this instance, BASI seeks some form of pre-lien hearing. See Good, 510 U.S. at 55 ("No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it."). Specifically, BASI asks for an extension of the administrative proceedings available to a taxpayer under the levy provisions, which require the staying of a levy action until an administrative hearing is held and related appeals have concluded. See 26 U.S.C. § 6330. The court agrees that the provision of some administrative hearing would likely be effective at reducing error.

However, the Supreme Court has never specifically required a hearing be held in all cases. See Gilbert, 520 U.S. at 930 ("'[W]e have rejected the proposition that [due process] always requires the State to provide a hearing prior to the initial deprivation of property.'" (quoting Parratt v. Taylor, 451 U.S. 527, 540 (1981)) (second alteration in original)); Good, 510 U.S. at 53 ("We tolerate some exceptions to the general rule

requiring predeprivation notice and hearing . . . .").

## C. Mathews Step Three—Government Interest

The Government's interest in securing funds after it has made an assessment is well established and clearly recognized to be very strong. G.M. Leasing Corp. v. United States, 429 U.S. 338, 352 n.18 (1977) ("[T]he very existence of government depends upon the prompt collection of revenues."); Bull v. United States, 295 U.S. 247, 260 (1935) ("[T]axes are the lifeblood of the government, and their prompt and certain availability an imperious need."); Phillips, 283 U.S. at 595 ("Property rights must yield provisionally to governmental need."). While the tax collection regime has changed over time,[3] the Government's interest has not. The Government continues to have a very strong interest in collecting taxes. See, e.g., SEC v. Credit Bancorp, Ltd., 297 F.3d 127, 139 (2d Cir. 2002); United States v. Forma, 42 F.3d 759,765-66 (2d Cir. 1994); Reardon, 947 F.2d at 1523.

BASI repeatedly points to the age of the cases cited by the Government in support of its interest. However, BASI has failed to identify a single case that suggests that this interest has lessened over time. To the contrary, courts have continued to reiterate the longstanding principle that "[t]ax is different." United States v. Forma, 42 F.3d 759, 766 (2d Cir. 1994); see, e.g., Fuentes, 407 U.S. at 92 & n.24 (characterizing the need to collect taxes as "essential"); Reardon, 947 F.2d at 1523 (describing the tax lien as "a law unto itself").

---

[3] Prior to the implementation of the IRS Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, the Tax Code went so far as to permit levying of property before permitting a hearing on the underlying assessment, see id. at § 3433(a). The Supreme Court upheld this summary process as constitutional, stating "The constitutionality of the levy procedure . . . 'has long been settled.'" Nat'l Bank of Commerce, 472 U.S. at 721 (quoting Phillips, 283 U.S. at 595). Since the amendments to the Code, however, the Government now stays a levy pending an appeal by the taxpayer. See 26 U.S.C. § 6330(e).

12

As discussed further below, the court finds that the exigent need for securing the Government's priority against other potential creditors is great, and the burden that the Government would experience if it were required to permit a hearing before the filing of every notice of tax lien appears to be quite substantial. Therefore, as compared to other similar cases, the Government's interest in this summary proceeding is very strong.

      1.    Exigency

The Supreme Court has repeatedly found a showing of exigency to be sufficient to permit pre-hearing deprivation. In this case, the very nature of a notice of a lien is to secure the Government's claim in property that might otherwise be expended or exhausted. Any form of pre-notice hearing would require the government to wait some period of time before it could secure its interest in the company. See, e.g., Good, 510 U.S. at 52 ("The ease with which an owner [can] frustrate the Government's interests in the forfeitable property [can] create[] a special need for very prompt action that justifie[s] the postponement of notice and hearing . . . ." (internal quotation marks omitted)).

BASI argues that the Government has failed to identify any specific concern of exigency with respect to BASI. However, courts have long regarded the Government's need to collect taxes as an example of per se exigency. See, e.g., Fuentes, 407 U.S. at 92 n.24 (describing the collection of revenue as an "essential" need that must be "immediately satisfied"); Reardon, 947 F.2d at 1523 ("The tax lien . . . arises from administrative necessity . . . ."). The court is persuaded that, in any instance where the Government has assessed a taxpayer, a need arises to secure those assets from

13

threat, including threats of which the Government is unaware. BASI is no different from any other taxpayer in that regard.

### 2. Burden of Additional Process

Included in an examination of the Government's interest is consideration of the burden of imposing additional process on the Government. The Supreme Court has long touted the need for the efficient administration of tax collection. See, e.g., Ariz. Dep't of Revenue v. Blaze Constr. Co., 526 U.S. 32, 37 (1999); see also Nat'l Bank, 472 U.S. at 721 ("Among the advantages of [a summary] administrative levy is that it is quick and relatively inexpensive."). While largely hypothetical, the court does not doubt the Government's representation that the introduction of an additional procedural requirement—such as a hearing—before permitting the IRS to notice would be a substantial burden on the administration of the system.

### D. Summary—Balancing the Interests and Risk of Error

Having examined the Mathews factors in detail, the court finds that BASI's due process rights are sufficiently protected. In the present case: (1) BASI has a property interest at stake that is not insubstantial, but the company is not facing immediate financial peril. Additionally, this interest is not as strong as it would be in the case of personal property, such as a home or household goods, nor is it as strong as it would be if the Government had seized BASI's assets outright; (2) The process available to BASI is neither particularly expedient nor is there any indication that it is inordinately slow. The availability of an Enochs injunction further mitigates the risk of an erroneous deprivation; (3) The Government's interest is very strong. The need to collect taxes is per se exigent, and the additional burden that the Government would face if it were

14

required to litigate every contested notice of lien before filing is considerable.

In light of the Government's strong interest and Benistar's failure to establish either an equally strong private interest or an inadequate procedure for the correction of error, the court concludes that the IRS's notice of lien provision is constitutionally sound.

BASI argues that this case is disposed of by a number of similar cases. In Connecticut v. Doehr, for example, the Supreme Court rejected as inadequate the provision of a lien on Doehr's house, absent a pre-deprivation hearing. However, as was discussed, supra at 5-6, the fact that the lien was placed on Doehr's home was important to the disposition of the case. Further, the interest of the tortfeasor in protecting a potential stake in his opponent's property is nowhere near as significant as the interest the Government has in protecting its potential stake in an allegedly delinquent taxpayer's property.

A case that is somewhat closer factually to this one is Reardon v. United States, 947 F.2d 1509. The First Circuit in that case found unconstitutional the notice of a lien filed by the EPA on real property owned by the Reardons, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606-9607. As in this case, the notice was filed without a prior hearing. Reardon, however, differs in two important respects from the present case. First, CERCLA did not provide for a prompt post-notice hearing—according to the court, a litigant could face up to a six year wait before receiving a hearing, Reardon, 947 F.2d at 1519-20. While there is no indication that the IRS hearing is particularly quick, there is also no reason for the court to find that it will be that unreasonably slow.

15

Second, in Reardon the governmental body imposing the lien was the EPA, whereas in the instant case that body is the IRS. Though it is arguable that the Reardon decision exaggerates when it describes the tax lien as a "law unto itself," id. at 1523, the First Circuit is correct that the IRS fulfills a special function that has long been recognized by the courts, see supra at 12-13, and is derived from the Constitution, see U.S. Const. art 1, § 8. This essential need for the government to collect taxes is one that may (and must) be protected more aggressively than others. See Reardon, 947 F.2d at 1523.

This does not mean that the IRS's actions are not proscribed by the Fifth Amendment. However, it does mean that, given the long recognized heightened governmental interest, less process is required than is required in other contexts. See Phillips, 283 U.S. at 597 ("Delay in the judicial determination of property rights is not uncommon where it is essential that governmental needs be immediately satisfied."). Indeed, the Reardon court itself concluded that the differences between the IRS and the EPA would be determinative. See Reardon, 947 F.2d at 1523 ("There is one situation, the federal tax lien, where the government's financial well-being may justify the draconian deprivation of its citizens' property. But an EPA lien is not on the level of a federal tax lien.").

Finally, BASI has failed to convince the court that the Supreme Court has wholly abandoned its holding in United States v. National Bank of Commerce, 472 U.S. 713. In that case, the Court upheld the prior Tax Code provision permitting the IRS to actually levy the property of an assessed taxpayer prior to a hearing. Id. at 721 The Court in National Bank relied principally on Phillips v. Commissioner for its statement

that, "The constitutionality of the levy procedure [in question], of course, 'has long been settled.'" Id. (quoting Phillips, 283 U.S. at 595).

In the more recent case of United States v James Daniel Good Real Property, the Court seemed to circumscribe its holding in Phillips by emphasizing the importance the Phillips Court placed on the existence of pre-seizure hearings. See Good, 510 U.S. at 60 ("In Phillips v. Commissioner, the Court relied upon the availability, and adequacy, of . . . preseizure administrative procedures in holding that no judicial hearing was required prior to the seizure of property." (citations omitted)). Justice Rehnquist, in his separate opinion in Good, suggested that, by this language, the majority dealt "a glancing blow to the authority of the Government to collect income tax delinquencies by summary proceedings," Id. at 70 (Rehnquist, J., concurring in part, dissenting in part).

The distinction between the present case and the dialogue in the Good decision is plain, however. The Court in Good was concerned with the summary seizure of property. In Good, the Government seized a home pursuant to a criminal investigation. Id. at 47 (majority opinion). The Court found such a seizure to be constitutionally unacceptable absent a pre-seizure hearing. Id. at 62. However, the Good Court acknowledged that the government might utilize other forms of summary deprivations less onerous than a seizure, such as a lis pendens. Id. The instant notice is precisely the kind of "less restrictive measure" contemplated by the Court in Good.

In the present case, BASI's due process rights are secured through a post-notice hearing and, in more extreme cases, through an injunction pursuant to Enochs v. Williams Packing & Navigation Co., 370 U.S. 1. Despite BASI's arguments, the court concludes that, in light of the Government's strong interest in the collection of taxes, the

17

process that is available to BASI suffices under the Fifth Amendment.

**V.    CONCLUSION**

For the foregoing reasons, the court denies Plaintiff's Motion for Partial Summary Judgment (Doc. No. 30).  In light of the undisputed record, and having notified plaintiff of its intention to do so (and receiving no objection), the court hereby grants partial summary judgment in favor of the Government with respect to Count Two of the Second Amended Complaint (Doc. No. 35).  See Fed. R. Civ. P. 56(f).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 10th day of December, 2010.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge